PEOPLE V JACKSON

Docket No. 110471. Submitted February 16, 1989, at Grand Rapids. Decided April 18, 1989. Leave to appeal applied for.

Defendant, Philip C. Jackson, a certified applicator of pesticides, pled nolo contendere in the 9th District Court to having violated the Pesticide Control Act on the basis of his responsibility under the act for his employee's failure to apply a pesticide at a residential site in accordance with recommended and accepted good practices in the use of pesticides. Defendant specifically reserved for appellate purposes the issue whether, as a matter of law, a certified applicator of pesticides could be held criminally responsible under the act for the illegal acts of his employee, a noncertified applicator under his instruction and control, even though defendant was not physically present at the residential site during application of the pesticide. The district court, Kenneth A. Fricke, J., imposed a fine of $100, costs of $50, and a fee of $5. Defendant appealed to the Kalamazoo Circuit Court. The circuit court, Philip D. Schaefer, J., reversed the district court, holding that a certified applicator could not be held criminally responsible for the illegal acts of his noncertified employee. The people appealed by leave granted.

The Court of Appeals *held*:

1. Section 12(6) of the act, MCL 286.562(6); MSA 12.340(12)(6), by its own terms, imposes vicarious criminal liability upon a certified applicator for actions in violation of the act performed by a noncertified applicator working under the instruction and control of the certified applicator.

2. Section 29(1) of the act, MCL 286.579(1); MSA 12.340(29)(1), preserves any liability, civil or criminal, which preexisted the act and reflects the intent to ensure the continued viability of the common law in this area wherever the common law does not conflict with a provision of the act. Here, the common law conflicts with § 12(6) and, therefore, § 12(6) controls.

3. Even if the language of the act were found to be ambigu-

REFERENCES

Am Jur 2d, Pollution Control §§ 333-346; Statutes §§ 287-289, 293-306.

ous, thus requiring construction, the Court of Appeals finds that the intent of the Legislature in enacting § 12(6) was to impose vicarious criminal responsibility on a certified applicator for violations of the act by a noncertified applicator under his instruction and control.

Reversed.

1. CRIMINAL LAW — STATUTES — JUDICIAL CONSTRUCTION.

The general rule that criminal statutes are to be strictly construed is inapplicable when the general purpose of the Legislature is manifest and is subserved by giving the words used in the statute their ordinary meaning; statutory language which is clear and unambiguous should be given its plain meaning by the judiciary.

2. ENVIRONMENT — PESTICIDE CONTROL ACT — CERTIFIED APPLICATORS — VICARIOUS CRIMINAL LIABILITY.

The Pesticide Control Act imposes vicarious criminal liability upon a certified applicator of pesticides for actions in violation of the act performed by a noncertified applicator working under his instruction and control (MCL 286.562[5] and [6], 286.576[1]; MSA 12.340[12][5] and [6], 12.340[29][1]).

3. ENVIRONMENT — PESTICIDE CONTROL ACT — COMMON LAW.

The Pesticide Control Act does not terminate or modify any liability, civil or criminal, which was in existence on the act's effective date; the act ensures the continued viability of the common law in this area wherever the common law does not conflict with a provision of the act (MCL 286.579[1]; MSA 12.340[29][1]).

4. CONFLICT OF LAWS — PESTICIDE CONTROL ACT — COMMON LAW.

There was no vicarious criminal liability at common law; therefore, the common law conflicts with the section of the Pesticide Control Act imposing vicarious criminal liability upon a certified applicator of pesticides for actions in violation of the act performed by a noncertified applicator working under his instruction and control and the act controls (MCL 286.562[5] and [6], 286.576[1]; MSA 12.340[12][5] and [6], 12.340[26][1]).

5. WORDS AND PHRASES — RESPONSIBLE.

Standing alone and unmodified, the word "responsible" encompasses both civil and criminal liability.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Paul L. Maloney,* Prose-

cuting Attorney, and *Thomas K. Byerley,* Special Assistant Prosecuting Attorney, for the people.

*Hatch & Smith* (by *James W. Smith*), for defendant.

Before: HOOD, P.J., and WAHLS and NEFF, JJ.

PER CURIAM. The people appeal by leave granted from a July 1, 1988, opinion and order of the Kalamazoo Circuit Court reversing defendant's misdemeanor conviction, which was entered pursuant to a plea of nolo contendere on January 13, 1988, by the 9th District Court, Second Division, in Portage. When defendant pled nolo contendere to having violated the Pesticide Control Act, 1976 PA 171; MCL 286.551 *et seq.*; MSA 12.340(1) *et seq.*, on the basis of his responsibility under § 12(6) of the act for an employee's failure to have applied a pesticide at a residential site in accordance with the recommended and accepted good practices in the use of pesticides, he specifically reserved for appellate purpose the issue whether, as a matter of law, a certified applicator of pesticides, such as himself, could be held criminally responsible, under § 12(6) of the act, for the illegal acts of a noncertified applicator, such as defendant's employee in this case. The circuit court held that a certified applicator could not be held criminally responsible for the illegal acts of an employed, noncertified applicator. We reverse.

The record reveals that defendant, Philip C. Jackson, a certified commercial applicator of pesticides under the Pesticide Control Act, is the branch manager of the Kalamazoo outlet of the Orkin Company, a nationwide pest control service. In May, 1987, James A. Gregart, who happens to be the prosecuting attorney for Kalamazoo County,

contracted with the Orkin Company to treat his home with chlordane, a pesticide regulated under the Pesticide Control Act. Defendant dispatched Andrew Price, a noncertified applicator of pesticides, to the Gregart home to apply the chlordane. Price's failure to follow the recommended and accepted procedures for use of the chemical prompted a complaint. Apparently, Price sprayed chlordane on the lawn of the Gregart home. When the complaint was verified, defendant discharged Price and, with an associate, properly applied the pesticide at the Gregart household. In addition, the Orkin Company refunded the downpayment of $167, cancelled the remaining balance of $930, added one year to the warranty period, paid $1,321 to replace carpeting in the downstairs area of the Gregart home, and paid $807 for medical examinations and testing for Gregart, his wife and his children.

Gregart subsequently applied for the appointment of a special prosecutor who would seek to impose criminal sanctions against defendant under the Pesticide Control Act.[1] As a result, a misdemeanor warrant was issued against defendant naming Gregart as the victim and a representative of the Michigan Department of Agriculture as the complaining witness. A preliminary motion to dismiss the charge was denied by the district court, and a plea of nolo contendere was entered pursuant to a plea bargain under the terms of which the issue of defendant's vicarious liability under the Pesticide Control Act was preserved for appeal. A fine of $100, costs of $50, and a fee of $5 were levied and, by stipulation, were to remain unpaid

---

[1] In their appellate brief the people note that "since Mr. Gregart is the Prosecuting Attorney for Kalamazoo County, Kalamazoo County Circuit Judge Richard Lamb issued an order on September 4, 1987 appointing the Berrien Prosecutor's Office as Special Prosecutor in this case."

pending appeal. The circuit court reversed defendant's misdemeanor conviction and the present appeal by the people ensued.

The sections of the Pesticide Control Act pertinent to this appeal, being §§ 12(5) and (6), 26(1), and 29(1), provide as follows:

> (5) A pesticide applicator shall follow recommended and accepted good practices in the use of pesticides including use of a pesticide in a manner consistent with its labeling.
>
> (6) A certified applicator shall be responsible for the application of a pesticide by a noncertified applicator under his instruction and control even though the certified applicator is not physically present. A certified applicator shall be physically present during the application of a pesticide if prescribed by the label. [MCL 286.562(5) and (6); MSA 12.340(12)(5) and (6).]

> (1) A person who violates this act is guilty of a misdemeanor and shall be fined not more than $500.00 for each offense. [MCL 286.576(1); MSA 12.340(26)(1).]

> (1) This act shall not terminate or in any way modify any liability, civil or criminal, which is in existence on the effective date of this act. [MCL 286.579(1); MSA 12.340(29)(1).]

No contention is made that defendant is criminally responsible under the act because the label of the chlordane used at the Gregart household required the physical presence of a certified applicator at the application site. Rather, the people contend that defendant is criminally responsible for the improper application of the chlordane by Andrew Price, a noncertified applicator who was acting under defendant's instruction and control, even though defendant was not physically present

at the residential site during application of the pesticide. The district court, in ruling that the responsibility or vicarious liability established in § 12(6) of the act regarding certified applicators included criminal responsibility and vicarious liability for such applicators, stated:

It is [defendant's] claim that . . . Section [12(6)] makes him only civilly responsible for what his non-certified applicator did.

The Statute does not say that it is only a civil liability that they are speaking of. . . .

Now, the purpose of the Act is to protect our environment and the protection of our environment is becoming a problem that is more and more acute. We are destroying what we have.

The Legislature recognizes that and has provided for these controls. Now, if we are going to say that the Act only imposes a civil liability upon the certified applicator and that it does not impose a criminal responsibility, then it is going to be very easy for a certified applicator to avoid his responsibility as such and if we pronounce that the Statute means what Mr. Jackson claims it means, he is only responsible in a civil action. Then the purpose for which the Legislature passed this Act will be voided.

The Act clearly puts the responsibility upon the certified applicator and [it] does that because he has to go through a certain training and so forth.

\* \* \*

I am of the opinion that the Act provides both for civil liability and for criminal responsibility for [a] certified applicator, when a person under his control violates the Act. . . it is my opinion that the Act provides for both civil and criminal responsibility because to say otherwise will be to say that the Act cannot perform the purpose for which it was intended and that is to control the application of pesticides, such as Chlordane, by hiring a non-certified person and tell him to go do it, turn him loose.

The circuit court, in reversing the district court, concluded that § 12(6) of the act does not subject certified applicators to vicarious criminal responsibility for the acts of noncertified applicators because such responsibility would be in derogation of the common law and was not specifically provided for in § 12(6). In its July 1, 1988, opinion and order, the circuit court stated:

If the defendant is criminally liable under the act, it is because of the application of the concept of vicarious liability. This court understands, and the People concede, that at common law there was no vicarious criminal liability. The common law is the law of this state. While the legislature has the authority to abrogate common law, it must do so in no uncertain terms and with specificity. *People v Serra,* 301 Mich 124 [3 NW2d 35] (1942). Since the Pesticide Control Act imposes vicarious criminal liability as applied here, it is in derogation of the common law. Because the act is further a penal statute, it must be strictly construed.

It is clear that section 12(6) of the act makes no mention of *criminal* liability. Rather, it uses the term "responsible." The People conceded at oral argument that this term is ambiguous. This does not mean, however, that this section of the act has no meaning. Indeed, it can be viewed as a restatement of the law of torts with regard to the concept of *respondeat superior.* Additionally, this section could undoubtedly be used to impose administrative sanctions on the defendant's license. Therefore, the section has meaning and is not a nullity.

This court questions whether the legislature spoke with the preciseness necessary to modify the common law with respect to vicarious criminal liability. First, it would have been very easy for the legislature to insert the word "criminally" following the word "responsible" in section 12(6) of the act. It chose not to do so. Secondly and even more curiously, section 29(1) of the act, being MCLA 286.579(1); MSA 12.340(29)(1), states very

clearly that the act in no way terminates or modifies any liability, civil or criminal, which is in existence on the effective date of the act. Since there was no vicarious criminal liability at common law, this section appears to indicate that the legislature did not believe it was changing nor did it intend to change the common law. Therefore, no criminal law could be violated and defendant's conviction must be reversed.

The district judge wisely noted that the purpose of the Statute is to prevent further degradation of the environment and to protect the public. This court strongly supports those goals. This court further believes that the legislature could impose vicarious criminal or civil liability if it chose to do so. To do so, however, requires an expression of legislative intent honed to more precision than used here.

It is true that "[c]riminal liability does not arise vicariously unless the Legislature so provides," *People v Wilcox,* 83 Mich App 654, 659; 269 NW2d 256 (1978); 21 Am Jur 2d, Criminal Law, § 181, pp 336-337; LaFave & Scott, Criminal Law, § 32, p 224, that in exercising its authority to abrogate the common law the Legislature must speak with specificity and in no uncertain terms, *People v Serra,* 301 Mich 124, 130; 3 NW2d 35 (1942), and that, in general, criminal statutes are to be strictly construed,[2] *People v Crousore,* 159 Mich App 304, 310; 406 NW2d 280 (1987), lv den sub nom *People v Wyngaard,* 430 Mich 893 (1988); Torcia, Wharton's Criminal Law (14th ed), § 12, pp 59-63. However, we do not believe that these principles work in this case to shield defendant from vicarious criminal liability under the Pesticide Control Act.

[2] We note that in the Michigan Penal Code it is provided:

The rule that a penal statute is to be strictly construed shall not apply to this act or any of the provisions thereof. All provisions of this act shall be construed according to the fair import of their terms, to promote justice and to effect the objects of the law. [MCL 750.2; MSA 28.192.]

The general rule that criminal statutes are to be strictly construed is inapplicable when the general purpose of the Legislature is manifest and is subserved by giving the words used in the statute their ordinary meaning. *United States v P Koenig Coal Co,* 270 US 512, 520; 46 S Ct 392, 394; 70 L Ed 709, 713 (1926). In addition, statutory language which is clear and unambiguous should be given its plain meaning by the judiciary. *People v Bound,* 163 Mich App 261, 264; 413 NW2d 762 (1987), lv den 429 Mich 887 (1987).[3]

In the Pesticide Control Act the Legislature provided that any person who violates a provision of the act is guilty of a misdemeanor. Since no level of intent is mentioned, strict liability is applicable. One provision of the act, § 12(5), requires a pesticide applicator to follow the recommended and accepted good practices in the use of pesticides, and another provision of the act, § 12(6), makes a certified applicator "responsible" for the application of a pesticide by a noncertified applicator under his instruction and control. While, as the circuit court stressed, the Legislature did not insert the modifier "criminally" before the operative word "responsible" in § 12(6), neither did it insert the word "civilly." The effect of the circuit court's ruling, however, is to limit the plain meaning of the term used by the Legislature so that the unlimited term "responsible" may mean only civilly, not criminally, responsible. We see no need to so qualify, circumscribe or restrict the plain meaning of the word chosen by the Legislature in

---

[3] Moreover, while it is true that the Pesticide Control Act is penal in nature, it is also, in a sense, remedial. Remedial statutes, and the remedial portions of penal statutes, are to be liberally construed. See, e.g., *Robinson v Harmon,* 157 Mich 272, 278; 122 NW 106 (1909); *Rancour v The Detroit Edison Co,* 150 Mich App 276, 285; 388 NW2d 336 (1986), lv den 428 Mich 860 (1987); *Pi-Con, Inc v A J Anderson Construction Co,* 169 Mich App 389, 395; 425 NW2d 563 (1988).

drafting § 12(6) of the Pesticide Control Act. Included in the definition of the term "responsible" one finds the following phrases: "liable to legal review or in case of fault to penalties," "liable to be called on to answer," *Webster's New Collegiate Dictionary* (1973), pp 986-987; "[i]nvolving personal accountability," *The American Heritage Dictionary of the English Language* (1981), p 1108; "[l]iable," "legally accountable or answerable," *Black's Law Dictionary, 5th ed* (1979), p 1180; and "[u]nder liability," *Ballentine's Law Dictionary* (1969), p 1106. Thus, it is apparent that modern lexicons in both the areas of language and law do not limit the meaning of the word "responsible" to include only civil liability or, stated conversely, to exclude criminal liability. Standing alone and unmodified, as it does in § 12(6), the word "responsible" encompasses both civil and criminal liability. The statute itself provides that a certified applicator "shall be responsible" for the application of a pesticide by a noncertified applicator under his instruction and control, and further provides that a violation of the act constitutes a misdemeanor. Thus, by its own terms, the statute imposes vicarious criminal liability upon a certified applicator for actions in violation of the act performed by a noncertified applicator working under the instruction and control of the certified applicator. See *People v De-Clerk,* 400 Mich 10, 20; 252 NW2d 782 (1977).

Nor is this plain meaning of the word "responsible" restricted or narrowed, as suggested by the circuit court, by the language in § 29(1). That section, as noted above, provides that the act does not terminate or modify any liability, civil or criminal, which was in existence on the act's effective date. We believe that the language of § 29(1) merely preserves any liability, civil or criminal, which preexisted the Pesticide Control Act.

To reason as did the circuit court, which stated that "[s]ince there was no vicarious criminal liability at common law, this section [§ 29(1)] appears to indicate that the legislature did not believe it was changing nor did it intend to change the common law," is to render meaningless an important part of the Pesticide Control Act. Since the misdemeanor liability and the licensing requirements created by the statute were unknown in the common law regarding pesticide control, if § 29(1) were interpreted to mean that the act in no way modifies existing liabilities in the area, very significant portions, perhaps the most significant portions, of the act would be of no purpose. We believe that § 29(1) simply reflects the intent to ensure the continued viability of the common law in this area wherever the common law does not conflict with a provision of the Pesticide Control Act. In the case at bar, regarding the vicarious criminal responsibility of a certified applicator for the acts of a noncertified applicator under his instruction and control, the common law conflicts with § 12(6). Thus, the latter controls. *Crousore, supra,* p 309.

Our analysis and conclusion in this case are consistent with the comments of other legal authorities. For example, in 21 Am Jur 2d, Criminal Law, § 181, pp 336-337,[4] it is stated:

> Unless he in some way participates in, counsels, or approves of what the servant does, or, as it is sometimes put, unless he counsels, commands, aids, or abets, or procures the commission of, an act, an employer or principal is not, in the absence of a statute, criminally liable for the acts of his employee or agent. . . .
> A statute may in certain instances fix criminal

---

[4] This same quotation was excerpted in *People v Wilcox,* 83 Mich App 654, 659-660; 269 NW2d 256 (1978), although a portion of the text and the citation to the source were incorrectly reported.

responsibility on an employer or principal for an act committed by his employee or agent.

In addition, in LaFave & Scott, *supra,* pp 224-225, it is stated:

> Some criminal statutes, generally containing no language of fault, specifically impose criminal liability upon the employer for the bad conduct of his employee—e.g., "whoever, by himself or by his agent, sells articles at short weight shall be punished by . . . ," or "whoever sells liquor to a minor is punishable by . . . and any sale by an employee shall be deemed the act of the employer as well as the act of the employee." Such statutes (generally carrying a misdemeanor penalty) are naturally construed to impose vicarious liability upon the employer though he expressly forbade his employee to engage in the forbidden conduct.
>
> Often statutes are not that specific as to whether or not they impose vicarious liability. In such a case, if the statutory crime is worded in language requiring some type of fault ("knowingly," "wilfully," "with intent to," etc.), then it is the rule that the employer must personally know or be wilful or have the requisite intention to be liable for the criminal conduct of his employee; even though the latter is acting to further his employer's business, the employer is not criminally liable unless he knew of or authorized that action. That is, if the statute requires mental fault, it will not be presumed that the legislature intended that the fault of the employee should suffice for conviction of the employer.
>
> In between the statutes which specifically require fault and those which specifically impose criminal liability on the employer for his employee's conduct fall those statutes which neither contain fault-words nor contain any expression that the conduct of the employee makes the employer liable. Thus a statute may simply state that "whoever employs children under 14 in a factory is guilty of a misdemeanor." The factory owner in-

structs his manager not to employ children under 14, but the manager disregards the instruction and does so. Is the owner liable? The question is one of construction of the statute, and is likely to be approached in much the same way as the question of whether statutes empty of language of fault are to be construed to impose strict liability. If the authorized punishment is light—a fine or perhaps a short imprisonment—the statute is likely to be construed to impose vicarious liability on a fault-less employer.[11] But if the permitted punishment is severe—a felony or a serious misdemeanor—the statute is not apt to be so construed in the absence of an express provision for vicarious responsibility.

---

[11] *Hershorn v People,* 108 Colo 43; 113 P2d 680; 139 ALR 297 (1941); Sayre, [*Criminal responsibility for the acts of another,* 43 Harv L Rev 689, 714 (1930)], citing cases both ways construing "petty misdemeanor" statutes; see also Annots, 43 LRA (NS) 2 (1913) (general) and 139 ALR 306 (1942) (liquor laws).

---

Even if we were to agree with defendant that the language in the Pesticide Control Act regarding the vicarious criminal responsibility of certified applicators is ambiguous and, thus, requires construction, we believe that the intent of the Legislature is to impose such responsibility. The authorized punishment is light, a fine of not more than $500 for each offense. As noted in LaFave & Scott, *supra:* "If the authorized punishment is light—a fine or perhaps a short imprisonment—the statute is likely to be construed to impose vicarious liability on a faultless employer." Moreover, only by imposing vicarious criminal responsibility can the full intent of the legislation, to protect the public health and safety from deliberate as well as negligent environmental degradation, effectively be carried out. The Pesticide Control Act allows the hiring of uncertified applicators to apply pesticides, but places on the certified applicators the responsibility for selecting, train-

ing, and instructing such uncertified applicators. To allow the certified applicator to escape vicarious criminal responsibility under these circumstances would be to preclude employment of the law's most puissant implement of public protection and to diminish the statute's deterrent effect. To hold that a certified applicator may be held criminally responsible for violations of the act only when he himself, and not a noncertified applicator under his instruction and control, has committed those violations "would be to prepare a way of easy escape" and "would go a long way . . . toward destroying the beneficial effects and purposes of this law." *Groff v State,* 171 Ind 547; 85 NE 769, 770-771 (1908); see also *United States v Park,* 421 US 658, 671-674; 95 S Ct 1903, 1911-1912; 44 L Ed 2d 489, 500-502 (1975).

It is obvious that the relationship between the environment and public health is synergistic in nature. As noted by H.L Mencken, health is "[s]imply a state in which the individual happens transiently to be perfectly adapted to his environment."[5] The illicit use of pesticides, of course, might well release into the environment poisons to which a person cannot adapt. A major purpose of the Pesticide Control Act is to regulate the release of such poisons so as to reduce the possibility of deleterious effects on the public health. We believe that our holding in this case is consistent with that purpose and is mandated under the language of the Pesticide Control Act.

Reversed.

---

[5] *American Mercury,* Vol XIX, No. 75 (March, 1930), p 288.