PEOPLE v HOCK SHOP, INC

Docket No. 245777. Submitted February 3, 2004, at Detroit. Decided April 8, 2004, at 9:00 A.M.

The Hock Shop, Inc., was charged in the 72nd District Court with two counts of sale of a firearm and ammunition to a felon. The district court, William B. Ward, J., dismissed the charges. The St. Clair Circuit Court, Peter E. Deegan, J., affirmed the dismissal. The prosecution appealed by leave granted, alleging that the lower courts erred in holding that a corporate employer may not be held vicariously liable under MCL 750.224f and MCL 750.223(4) for the criminal acts of its employees committed during the course of their employment.

The Court of Appeals *held*:

1. The defendant corporation is a legal "person" under the plain language of MCL 750.10, 750.222(g), and 750.223. However, the fact that the defendant corporation is a legal person does not automatically make it liable for the acts of other persons. In this matter, where the prosecution does not allege that the defendant corporation committed the criminal act itself or that the illegal sales were made pursuant to any policies of the corporation, but, rather, alleges that the employee's misconduct was within the course of his employment and was undertaken for the sole benefit of the corporation, even though it was contrary to the corporation's policies, any liability that may be imposed on the corporation would arise through the doctrine of respondeat superior only.

2. The statute at issue, MCL 750.223, has no express provision providing for vicarious liability, no implicit provision for vicarious liability, and is not ambiguous with regard to the imposition of vicarious liability. The statute does not impose vicarious liability on the defendant corporation for the acts of an employee.

Affirmed.

CRIMINAL LAW — SALE OF FIREARMS TO FELONS — CORPORATIONS — VICARIOUS LIABILITY.

The statute that prohibits the sale of firearms and ammunition to a felon does not impose vicarious criminal liability on a corporation

for the acts of an employee who violates the act during the course of his employment (MCL 750.223).

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Mark E. Blumer*, Assistant Attorney General, for the people.

*Fletcher Galica Clark Tomlinson & Fealko, P.C.* (by *Gary A. Fletcher* and *John D. Monaghan*), for the defendant.

Before: CAVANAGH, P.J., and GAGE and ZAHRA, JJ.

GAGE, J. Defendant corporation was charged with two counts of sale of a firearm and ammunition to a felon, in violation of MCL 750.224f and MCL 750.223(4). The district court dismissed the charges and the circuit court affirmed the dismissal. The prosecution now appeals to this Court by leave granted. We affirm.

The issue presented in this case is solely a legal one and presents an issue of first impression. It was conceded at the preliminary examination that defendant's employee sold the firearm and ammunition to a felon and did so knowingly. The issue in dispute is whether a corporate employer can be held vicariously liable under the act for the criminal acts of its employees committed during the course of their employment.

## I. FACTUAL HISTORY

There is no controversy concerning the facts in this case. In January 2001, defendant was the subject of an undercover investigation conducted by the Attorney General and the Michigan State Police concerning the illegal sale of firearms to convicted felons. On January 18, 2001, Ernesto Doxtader, a convicted felon, entered defendant's store with a female undercover Michigan

State Police officer. Doxtader expressed interest in buying a 9 mm semiautomatic rifle, but when he told the sales clerk that he had a felony conviction, the sales clerk informed him that the conviction disqualified him as a buyer. Doxtader then asked the clerk if his friend could buy the gun in her name and the sales clerk said that she could do so. The undercover officer filled out the application and was approved. Doxtader paid cash for the weapon and some appropriate ammunition and left the store with the items in his possession.

On June 19, 2001, defendant was charged with two counts of knowingly selling a firearm and ammunition to a felon in violation of MCL 750.224f and MCL 750.223(4). In lieu of testimony, the parties agreed that the case would be decided on the basis of the police report, a videotape of the gun sale to Doxtader, and an affidavit of defendant's corporate president stating that the corporation's policies were to train employees thoroughly in regard to the applicable laws, to mandate compliance with all state and federal laws, and to strictly forbid illegal sales on penalty of immediate discharge. After finding that a corporation was not a "person" under MCL 750.223, the district court refused to bind defendant over on the charges. The prosecution moved for reconsideration, pointing out that both the Penal Code and the Code of Criminal Procedure include "corporation" in the definition of "person." However, the court refused to impose vicarious liability and denied the motion.

The prosecution appealed the decision to the circuit court. In a written opinion issued November 7, 2002, the court noted that the Penal Code states that a "person" includes a corporation "unless a contrary intention appears." The court essentially found that because MCL 750.223 requires that the firearm be

"knowingly" sold to a felon, and does not include a provision imposing corporate vicarious liability, the language of the statute indicated that the Legislature did not intend that the corporation be held liable for the acts of its agent. Accordingly, the court concluded that the district court did not abuse its discretion in refusing to bind over defendant and it affirmed the district court's decision. The prosecution moved for reconsideration, arguing that the court erred in employing an abuse of discretion review standard and that a review de novo standard applied to questions of statutory interpretation. In an order entered December 12, 2002, the court granted reconsideration, but concluded that the application of a review de novo standard did not change its analysis, stating "that the statutory interpretation of the lower court, and its refusal to find that [d]efendant's actions fell within the criminal statute in question were correct. There is no provision within the statute which provides for vicarious liability."

## II. STANDARD OF REVIEW

"[T]he interpretation and application of statutes is a question of law that is reviewed de novo." *People v Webb*, 458 Mich 265, 274; 580 NW2d 884 (1998). Where statutory language is clear and unambiguous, judicial construction is precluded. *People v Pitts*, 216 Mich App 229, 232; 548 NW2d 688 (1996).

## III. ANALYSIS

### A. IS DEFENDANT A "PERSON" FOR PURPOSES OF MCL 750.223?

We will first briefly address the argument concerning whether defendant is a person capable of incurring liability under the statute in question.

MCL 750.223 provides in relevant part:

(3) A seller shall not sell a firearm or ammunition to a person if the seller knows that either of the following circumstances exists:

\* \* \*

(b) The person [as a convicted felon] is prohibited under section 224f from possessing, using, transporting, selling, purchasing, carrying, shipping, receiving, or distributing a firearm.

(4) A person who violates subsection (3) is guilty of a felony, punishable by imprisonment for not more than 10 years, or by a fine of not more than $5,000.00, or both.

"Seller" is defined in MCL 750.222(g) as "a person who sells, furnishes, loans, or gives a pistol to another person." Under the general provisions of the Penal Code, MCL 750.10, "person" includes corporations, copartnerships, and associations "unless a contrary intention appears . . . ." There is no provision in MCL 750.223 exempting corporations from the definition of "person." Therefore, under the plain language of the applicable statutes, defendant cannot escape liability simply because it is a corporation. Equally obvious, however, we note that the fact that defendant is a legal person does not automatically make it criminally liable for the acts of other persons.

There is no allegation in this case that the criminal act was committed by the corporation itself. Further, there is no allegation that the illegal gun sale was made pursuant to any policies of the defendant corporation. See, e.g., *People v Gen Dynamics Land Systems, Inc*, 175 Mich App 701; 438 NW2d 359 (1989) (holding the corporate defendant could be found guilty of manslaughter where the corporation's own negligent act or omission regarding employee safety was alleged to have caused an employee's death). Instead, the prosecution

alleges that defendant should be held criminally liable where its employee's misconduct was within the course of his employment and was undertaken for the sole benefit of defendant, even though it was contrary to defendant's policies. Consequently, in this case, even though the corporation is a person, any liability that may be imposed arises only through the doctrine of respondeat superior. See *Cox v Flint Bd of Hosp Managers*, 467 Mich 1, 11; 651 NW2d 356 (2002).

### B. CAN DEFENDANT BE HELD LIABLE FOR THE ACTS OF ITS EMPLOYEE?

There are numerous civil cases holding that a corporation can be held vicariously liable for the tortious acts of its agents. However, there are far fewer cases addressing the extent of corporate respondeat superior liability in the context of criminal activity. Under vicarious liability, the principal " 'is only liable because the law creates a practical identity with his [agents], so that he is held to have done what they have done.' " *Id.*, quoting *Smith v Webster*, 23 Mich 298, 300 (1871). It is quite clear that while courts have been fairly liberal in allowing the imposition of vicarious liability in the context of tort actions, see *Upjohn Co v New Hampshire Ins Co*, 438 Mich 197; 476 NW2d 392 (1991), such liability has been substantially limited in the criminal context.

In 1 Restatement Agency, 2d, § 217D, 474, it is acknowledged that "[a] principal may be subject to penalties enforced under the rules of the criminal law, for acts done by a servant or other agent." However, the comments on that section make clear that in the absence of an express statutory provision imposing such liability, it will generally not be found to exist where the

statute requires a specific criminal intent.[1] See also LaFave & Scott, Criminal Law, § 32, pp 224-225.

Generally, where the agent is a manager, officer, or board member of the corporation, the agent's criminal intent can be imputed to the corporation itself. See *People v American Medical Ctrs of Michigan, Ltd*, 118 Mich App 135; 324 NW2d 782 (1982). In *American Medical Ctrs*, the corporate defendant was found criminally liable for Medicaid fraud where the president of the corporation authorized fraudulent billings. In this case, however, there is no evidence suggesting that any corporate officer was involved in the illegal sale. Thus, the Court in *American Medical Ctrs* did not resolve the key issue in this case, namely, whether a corporate defendant can be held vicariously, criminally liable for the acts of employees who are not high management officials.

In this case, we must determine the intent of the Legislature. Statutory language should be construed

---

[1]

b. *Where no criminal intent.* Even apart from statute, in some of the minor crimes, neither intent to violate the law nor knowledge of facts which constitute a violation is an element in the crime. Many regulatory statutes do not require intent to violate them, or even knowledge of the act or condition which causes the conduct to be illegal. In such cases, a master or other principal may be held subject to a penalty for conduct of servants or other agents acting on his behalf in . . . conducting transactions of the kind for which they are employed. . . .

\* \* \*

d. *Acts requiring a specific criminal intent.* Apart from statute, an employer is not subject to a penalty for an unauthorized act constituting a crime committed by an ordinary servant in the scope of employment if the basis for liability is a specific criminal intent. . . . Even in such cases, however, a statute may provide for the liability of the employer. [*Id.* pp 474-475.]

reasonably, keeping in mind the purpose of the act. *People v Spann*, 250 Mich App 527, 530; 655 NW2d 251 (2002). Nothing should be read into a statute that is not within the manifest intention of the Legislature as derived from the language of the statute itself. *Id.* at 532. This Court may not speculate regarding the probable intent of the Legislature beyond the language expressed in the statute. *Pohutski v City of Allen Park*, 465 Mich 675, 683; 641 NW2d 219 (2002). The Legislature is presumed to be familiar with the rules of statutory construction, and when it is promulgating new laws it is presumed to be aware of the consequences of its use or omission of statutory language. *People v Ramsdell*, 230 Mich App 386, 392; 585 NW2d 1 (1998).

The statute at issue in this case has no specific provision for vicarious liability. Because it has no express provision providing for vicarious liability, we cannot read such intent into the statute. This conclusion is consistent with the rules of statutory construction, as well as case law concerning this issue.

In *People v Wilcox*, 83 Mich App 654; 269 NW2d 256 (1978), this Court considered the imposition of criminal penalties on a partner in a junk dealership whose employee criminally violated the secondhand and junk dealers act, MCL 445.401 *et seq*. The defendant and his brother were partners in a secondhand store. An individual went to the defendant's store to purchase an automobile tape deck to replace one that had been stolen from his car. On the counter in the store, the individual saw the tape deck that had been stolen from his car and he reported this information to the police. Subsequently, two detectives went to the defendant's store and located the tape deck. The detectives asked two of the defendant's employees to show them the pawn ticket and ledger entry related to the item, but the

employees failed to do so because none had been pre-
pared. Criminal charges were then brought against the
defendant for violating the secondhand and junk deal-
ers act, for the failure as a secondhand merchandise
dealer to record the purchase of the tape deck in a
ledger book open to inspection, in violation of MCL
445.404, and for the failure to take and forward the
seller's thumb print with a statement of the nature of
the property received to the city and state police, in
violation of MCL 445.472. The defendant was thereaf-
ter convicted.

The defendant appealed his conviction, claiming he
could not be held vicariously liable under the act for the
actions or omissions of his employees, of which he had
no knowledge. Construing the statute, this Court found
that the section of the act under which the defendant
was convicted had no specific provision making a sec-
ondhand dealer liable for his employee's defaults.[2] This
Court considered the secondhand and junk dealers act
as being in pari materia with the pawnbroker's act,
MCL 446.201 *et seq.*, which specifically provides that
pawnbrokers are liable for the wrongful acts of their
employees with regard to the sanction of license revo-

---

[2] Section 8 of the secondhand and junk dealers act provides:

Every person violating any of the provisions of this act shall be
punished by a fine not exceeding one hundred dollars, nor less
than ten dollars, or by imprisonment in the county jail not
exceeding six months, or by both such imprisonment and fine. In
case any person, corporation, copartnership or firm shall be found
guilty of violating any of the provisions of this act, the license
issued to such person, corporation, copartnership or firm shall be
deemed to have been revoked ipso facto, and such person, corpo-
ration, copartnership or firm shall not be permitted to carry on
such business within this State for a period of one year after such
conviction. [MCL 445.408.]

cation.[3] This Court concluded that because the second-hand and junk dealers act did not include a similar provision, the Legislature did not intend to impose vicarious liability on secondhand or junk dealers for the actions of their employees.

Similarly, in *People v King Tut*, 152 Mich App 249; 394 NW2d 30 (1986), three defendants were charged with two counts of violating the Precious Metal and Gem Dealer Act, MCL 445.481 *et seq*. Defendant King Tut, was the assumed business name of defendant Marc Levise, who was licensed to deal in precious metals and gems. The third defendant, Vernon Jocque, was the employee of King Tut who sold items in violation of the act by failing to retain gold jewelry and gems for a period of seven days after their purchase, contrary to MCL 445.485, and knowingly receiving these items without recording their purchase, contrary to MCL 445.484. One issue in the case was whether a business operating under an assumed name could be vicariously liable under the act for the actions of its employees. The act at issue in the case did not have a specific provision creating vicarious liability. Relying in part on *Wilcox*, and considering the Precious Metal and Gem Dealer Act as being in pari materia with the secondhand and junk dealers act and the pawnbroker act, this Court concluded that "if the Legislature had intended to impose

---

[3] Section 19 of the pawnbrokers act provided at the relevant time:

Upon any such conviction of any person doing business as a pawnbroker under the provisions of this act, *or on conviction of any clerk, agent, servant or employee of any such person*, the license of such person shall forthwith be revoked by the mayor of the city or president of the village, and no part of the license fee of such party shall be returned to him, and no further license as a pawnbroker shall be granted to such person for the period of one year from the date of such revocation. [MCL 446.219 (emphasis added).]

vicarious liability upon dealers of precious metals and gems for the actions of their employees, the Legislature would have stated this intent in the act." *King Tut*, *supra* at 252. Thus, because there was no express provision creating vicarious liability, this Court found that the defendant business could not be held vicariously liable under the act.[4]

Finally, *People v Jackson*, 176 Mich App 620; 440 NW2d 39 (1989), involved an attempt to impose vicarious criminal liability for a violation of a pesticide statute on the basis of actions of an employee who was a "noncertified applicator" of the pesticide, not on the business itself, but on its individual branch manager who was a "certified applicator." *Id.* at 622. The defendant was a certified commercial applicator of pesticides under the Pesticide Control Act, MCL 286.551 *et seq.* The defendant dispatched an employee, who was a noncertified applicator of pesticides, to a customer's house, but the employee failed to follow the recommended and accepted procedures for the application of the pesticide. Charges were brought against the defendant under the act and the defendant pleaded nolo contendere to a charge that he violated the act, specifically reserving for appellate purposes the issue whether he could be held criminally responsible under the act for the illegal acts of a noncertified applicator.

In *Jackson*, vicarious liability was upheld. While the opinion made clear that the defendant was not responsible for or aware of his employee's improper applica-

---

[4] We note that the prosecution in *King Tut* alternatively argued that the defendant business was directly liable as a dealer for dealer violations of the act. However, the Court found that King Tut was the alias of Marc Levise, who was the actual dealer, and King Tut was not a separate legal entity. On the basis of this, the Court determined that when Marc Levise was dismissed from the case, the dismissal extended to his alias. *King Tut, supra* at 253.

tion of a pesticide, this Court found that the statute in question contained explicit language making a certified applicator responsible for the application of pesticide by a noncertified applicator, even if not physically present. *Id.* at 624.[5] Therefore, this Court reasoned, a plain meaning reading of the Pesticide Control Act showed a legislative intent to impose criminal, as well as civil, liability for the violation of the act in such circumstances. *Id.* at 628-629.

We note that the *Jackson* Court also discussed at length the general principles of imposing vicarious criminal liability. The Court's analysis, albeit dicta, is instructive regarding how the Court reached its conclusions, notwithstanding the fact that it was unnecessary for the Court to add this additional support. The Court made two specific points. First, when common-law principles and clear statutory language conflict, the statute controls. *Id.* at 630. Second, the Court offered a general rule of thumb: if a statute has ambiguous language regarding the imposition of vicarious liability, vicarious liability probably will be imposed if the punishment authorized is minor, "but if the permitted punishment is severe—a felony or serious misdemeanor—the statute is not apt to be so construed in the absence of an express provision for vicarious liability." *Id.* at 630-632, citing 21 Am Jur 2d, Criminal Law, § 181, pp 336-337, and quoting LaFave & Scott, Criminal Law, § 32, pp 224-225. Applying these principles, the *Jackson* Court ruled that even if language in the

---

[5] MCL 286.562(6) stated:

(6) A certified applicator shall be responsible for the application of a pesticide by a noncertified applicator under his instruction and control even though the certified applicator is not physically present. A certified applicator shall be physically present during the application of a pesticide if prescribed by the label.

Pesticide Control Act concerning vicarious liability were arguably ambiguous with respect to criminal liability, the punishment involved was so "light, a fine of not more than $500 for each offense," that imposition of criminal liability was appropriate. *Jackson, supra* at 632.[6]

The statute in the case at bar contains no "express provision for vicarious responsibility." In fact, it does not even have an implicit provision for vicarious responsibility, nor is it ambiguous with regard to the imposition of vicarious liability. Thus, we need only look at the language of the statute to determine the intent of the Legislature. Accordingly, we find that if the Legislature had intended to impose vicarious liability on the corporate defendant under the firearm statute at issue, the Legislature would have expressly stated such intent in the act. Because the Legislature did not expressly state such intent, we find none. Our conclusion and analysis in this case is consistent with other authorities addressing similar issues. See *Jackson, supra*; *Wilcox, supra*; *King Tut, supra.*

IV. CONCLUSION

In sum, while defendant is a "person" under MCL 750.223, the statute does not expressly or ambiguously provide for vicarious liability. Thus, defendant cannot be held liable for the acts of its employee.

Affirmed.

---

[6] In contrast to *Jackson*, the instant case concerns a major offense involving a penalty of up to ten years in prison and a five thousand dollar fine, and containing a criminal intent requirement in that the seller must "know" that the sale violates the statute at the time of the transaction.