PEOPLE v DERROR (ON RECONSIDERATION)
PEOPLE v KURTS (ON RECONSIDERATION)

Docket Nos. 258346, 259315. Submitted May 3, 2005, at Lansing. Decided September 6, 2005, at 9:05 a.m. Leave to appeal granted, 474 Mich 886, 887.

Delores M. Derror was charged in the Grand Traverse Circuit Court with operating a motor vehicle while under the influence of marijuana (a schedule 1 controlled substance) and with causing a motor vehicle accident resulting in death and serious injury while driving under the influence of marijuana, whose psychoactive ingredient is THC. The court, Philip E. Rogers, J., determined that the substance in her blood, carboxy THC, is not a schedule 1 controlled substance, determined that a jury could find from the presence of that substance in her blood that she had THC in her body at the time of the accident, and required the prosecution to establish at trial that the presence of THC in Derror's blood was a proximate cause of the accident for the purposes of the charges of causing a motor vehicle accident resulting in death and serious injury. The prosecution appealed by leave granted.

Dennis W. Kurts was charged in the Jackson Circuit Court with operating a motor vehicle while under the influence of marijuana. The court, Chad C. Schmucker, J., dismissed the charge, ruling that there was insufficient evidence for a jury to find that Kurts was operating a motor vehicle while under the influence of marijuana on the basis of the presence of carboxy THC in his blood. The prosecution appealed by leave granted.

The Court of Appeals consolidated the appeals and, on reconsideration, *held*:

In *Derror*, the trial court correctly determined that carboxy THC is not a schedule 1 controlled substance, but that the presence of carboxy THC may be evidence of a schedule 1 controlled substance in Derror's body at the time of the alleged violation. To the extent that the trial court required the prosecution to establish consistently with *People v Lardie*, 452 Mich 231 (1996), that Derror's decision to drive while under the influence of .or impaired by a controlled substance was a substantial cause of the victims' death or serious injury, the trial court order must be reversed. Pursuant to *People v Schaefer*, 473 Mich

418 (2005), the prosecution must establish that Derror's operation of her vehicle, rather than the presence of a controlled substance in her body, was both a factual and proximate cause of the victims' death or serious injury.

In *Kurts*, the trial court correctly determined that carboxy THC is not a schedule 1 controlled substance. However, the order of dismissal based on the erroneous determination that the presence of that substance was not evidence of the presence of a schedule 1 controlled substance in Kurts's body at the time of the alleged violation must be reversed.

*Derror*, affirmed in part, reversed in part, and remanded for further proceedings.

*Kurts*, affirmed in part, reversed in part, and remanded for further proceedings.

CONTROLLED SUBSTANCES — SCHEDULE 1 CONTROLLED SUBSTANCES — CARBOXY THC — MARIJUANA — EVIDENCE.

Carboxy THC is not a schedule 1 controlled substance, but its presence in a motorist's blood may provide evidence of tetrahydrocannabinol (THC), the psychoactive ingredient of marijuana, for the purposes of determining whether the motorist was operating a motor vehicle while under the influence of marijuana (MCL 257.625[8]).

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, *Alan Schneider*, Prosecuting Attorney, and *Robert A. Cooney*, Assistant Prosecuting Attorney, for the people in the *Derror* case.

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, *Henry C. Zavislak*, Prosecuting Attorney, and *Jerrold Schrotenboer*, Chief Appellate Attorney, for the people in the *Kurts* case.

State Appellate Defender (by *Christine A. Pagac*) for Delores M. Derror.

*Jerry M. Engle* for Dennis W. Kurts.

ON RECONSIDERATION

Before: COOPER, P.J., and JANSEN and HOEKSTRA, JJ.

COOPER, P.J. In these consolidated appeals, the prosecution appeals by leave granted[1] two trial court orders ruling that "carboxy THC"[2] is not a schedule 1 controlled substance under MCL 333.7212(1)(d) for purposes of punishing violations of MCL 257.625(8), which prohibits the operation of a motor vehicle with any amount of a schedule 1 controlled substance in the body. In *People v Derror*, the prosecution also appeals a trial court order ruling that, pursuant to MCL 257.625(4) and MCL 257.625(5), the prosecution must prove that the presence of a controlled substance in a defendant's body is a proximate cause of an accident resulting in death or serious injury. In *People v Kurts*, the prosecution appeals the dismissal of the charges against defendant, Dennis Wayne Kurts, based on the insufficiency of the evidence.

We agree with the trial courts' determinations that carboxy THC is not a schedule 1 controlled substance. However, we disagree with the trial court in *Kurts* that the presence of this substance in a defendant's blood is not evidence of the presence of THC,[3] a schedule 1 controlled substance. Pursuant to the Michigan Supreme Court's recent decision in the companion cases of

---

[1] In Docket No. 258346, this Court granted the prosecution's motion to file an interlocutory appeal and stayed the trial court proceedings. *People v Derror*, unpublished order of the Court of Appeals, entered October 21, 2004 (Docket No. 258346). In Docket No. 259315, this Court granted the prosecution's motion to file an interlocutory appeal after one count—violation of MCL 257.625(8)—was dismissed before trial. Defendant proceeded to trial on the remaining counts. *People v Kurts*, unpublished order of the Court of Appeals, entered December 27, 2004 (Docket No. 259315).

[2] Carboxy THC is known by many names and was also referred to as "11 Carboxy THC" and "11-COOH-THC" in the lower court proceedings.

[3] THC, or tetrahydrocannabinol, is the psychoactive ingredient of marijuana. *People v Sinclair*, 387 Mich 91, 105-106; 194 NW2d 878 (1972); *People v Riddle*, 65 Mich App 433, 436 n 1; 237 NW2d 491 (1975).

*People v Schaefer* and *People v Large*,[4] we find that the trial court in *Derror* improperly determined that the prosecution must prove beyond a reasonable doubt that a defendant's "decision to drive with any amount of a controlled substance in her body produced a change in her operation of the vehicle that was a substantial cause of the victim's death." We presume from the opinion that the Supreme Court will apply this case retroactively.[5] Accordingly, we affirm in part and reverse in part the trial court's orders in *Derror*, and reverse the trial court's order dismissing the case against Mr. Kurts in *Kurts*. We, therefore, remand in both cases for further proceedings consistent with this opinion.

## I. FACTS AND PROCEDURAL HISTORY

In *Derror*, defendant Delores Marie Derror was charged with violating MCL 257.625(8) for driving under the influence of marijuana, a schedule 1 controlled substance, and with violating MCL 257.625(4) and MCL 257.625(5) for causing a motor vehicle accident resulting in death and serious injury. Ms. Derror was driving eastbound on a snow and slush-covered M-72 at approximately 6:00 p.m. on a snowy January 11, 2004, when she crossed into oncoming traffic and

---

[4] *People v Schaefer*, 473 Mich 418; 703 NW2d 774 (2005).

[5] As Justice YOUNG noted in the opinion:

> Although it is true . . . that prior precedent from the United States Supreme Court and this Court has held that there are due process limitations on the retroactive application of judicial interpretations of criminal statutes that are "unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue," [*People v Doyle*, 451 Mich 93, 101; 545 NW2d 627 (1996),] we believe that it is not "indefensible or unexpected" that a court would, as we do today, overrule a case that failed to abide by the express terms of a statute. [*Schaefer, supra* at 444 n 80.]

collided with another vehicle. The front-seat passenger was killed, two children riding in the back seat were paralyzed, and a third child received a broken neck and jaw. Deputy sheriffs found five marijuana cigarettes in Ms. Derror's purse while looking for identification. Ms. Derror later admitted that she had smoked one marijuana cigarette at 2:00 p.m. Two separate blood samples were analyzed for the presence of illegal substances. The first blood sample drawn contained 38 nanograms per milliliter of carboxy THC, and the second contained 31 nanograms per milliliter of the same substance.

In *Kurts*, Mr. Kurts was also charged with operating a motor vehicle under the influence of marijuana in violation of MCL 257.625(8). Mr. Kurts was stopped at approximately 9:45 p.m. on February 25, 2004, for driving erratically. The officer initiating that stop noted the Mr. Kurts smelled of alcohol and that his eyes were glassy and bloodshot. Mr. Kurts admitted to drinking two beers and was asked to exit the vehicle. After the officer discovered a marijuana pipe in Mr. Kurts's pocket during a pat-down search, Mr. Kurts admitted to smoking marijuana only a half-hour earlier.[6] Mr. Kurts's blood contained eight nanograms per milliliter of carboxy THC, and 0.07 grams of alcohol per 100 milliliters.

In each case, both the prosecution and the defense presented the testimony of expert witnesses at pretrial evidentiary hearings regarding the characteristics of marijuana, THC, and carboxy THC. The experts agreed that carboxy THC is a "metabolite," or byproduct of metabolism,[7] created in the human body during the body's biological process of converting marijuana into a

---

[6] The officer also found a bag containing "suspected" marijuana.

[7] See *People v Hardy*, 188 Mich App 305, 307 n 1; 469 NW2d 50 (1991).

water-soluble form that can be excreted more easily. Its presence in the blood conclusively proves that a person ingested THC at some point in time. However, carboxy THC itself has no pharmacological effect on the body and its level in the blood correlates poorly, if at all, to an individual's level of THC-related impairment. In fact, carboxy THC could remain in the blood long after all THC has gone, as THC quickly leaves the blood and enters the body's tissues.[8]

In *Derror*, the trial court determined, following a pretrial evidentiary hearing, that the Legislature did not intend to include carboxy THC as a schedule 1 controlled substance because it has no pharmacological effect on the human body. The court did not dismiss the case against Ms. Derror, however, because a jury could determine from the presence of this substance in her blood that she had THC in her body at the time of the accident. Although the prosecution argued that MCL 257.625(8) is a strict liability statute, the court ordered that the prosecution would be required to establish at trial that the presence of the THC in Ms. Derror's blood was a proximate cause of the accident for purposes of MCL 257.625(4) and MCL 257.625(5).

In *Kurts*, the trial court granted Mr. Kurts's motion to dismiss his charged violation of MCL 257.625(8). Following an evidentiary hearing, the court determined that the Legislature did not intend to include carboxy

---

[8] The prosecution's expert witness in *Kurts*, Dr. Felix Adatsi, testified more specifically that the presence of carboxy THC in the blood indicates marijuana use within the last 24 hours and its presence in the urine indicates use within the last week. The defense expert witness in *Derror*, Dr. Daniel McCoy, testified that THC leaves the blood within two hours, but could be found in the body's tissues even a day later.

THC as a schedule 1 controlled substance because it has no pharmacological effect or medicinal value. As the level of carboxy THC in a person's blood bears a poor correlation to the level of THC in a person's body, the court found that there was insufficient evidence for a jury to find that Mr. Kurts was operating a motor vehicle with a controlled substance in his body at the time of his traffic stop. These appeals followed.

II. NATURE OF CARBOXY THC

These cases present an issue of first impression—whether carboxy THC, a metabolite of a schedule 1 controlled substance, can be considered a schedule 1 controlled substance itself for purposes of proceeding against a defendant under MCL 257.625(8). Issues of statutory interpretation are questions of law subject to review de novo on appeal.[9] The primary goal in statutory construction is to ascertain and give effect to the intent of the Legislature.[10] It is only when statutory language is ambiguous that we are permitted to look beyond the statute to determine the Legislature's intent.[11] When construing an ambiguous statute, "[t]he court must consider the object of the statute, the harm it is designed to remedy, and apply a reasonable construction that best accomplishes the statute's purpose, but should also always use common sense."[12] In this regard, courts should seek to avoid a construction that

[9] *Eggleston v Bio-Medical Applications of Detroit, Inc*, 468 Mich 29, 32; 658 NW2d 139 (2003).

[10] *Weakland v Toledo Engineering Co*, 467 Mich 344, 347; 656 NW2d 175 (2003).

[11] *DiBenedetto v West Shore Hosp*, 461 Mich 394, 402; 605 NW2d 300 (2000).

[12] *Morris & Doherty, PC v Lockwood*, 259 Mich App 38, 44; 672 NW2d 884 (2003).

would produce absurd results, injustice, or prejudice to the public interest.[13]

Defendants were charged with violating MCL 257.625(8), which provides:

> A person, whether licensed or not, shall not operate a vehicle upon a highway . . . within this state if the person has in his or her body any amount of a controlled substance listed in schedule 1 under section 7212 of the public health code, 1978 PA 368, MCL 333.7212, or a rule promulgated under that section . . . .[14]

Marijuana, spelled "marihuana" in the statute, is expressly included as a schedule 1 controlled substance in MCL 333.7212(1)(c). This statute does not expressly include carboxy THC, by any name, as a schedule 1 controlled substance. MCL 333.7212(1)(d) further provides:

> Except as provided in subsection (2), *synthetic* equivalents of the substances contained in the plant, or in the resinous extractives of cannabis and *synthetic* substances, derivatives, and their isomers with similar chemical structure or pharmacological activity, or both, such as the following, are included in schedule 1:
>
> (i) $\Delta^1$ cis or trans tetrahydrocannabinol, and their optical isomers.
>
> (ii) $\Delta^6$ cis or trans tetrahydrocannabinol, and their optical isomers.
>
> (iii) $\Delta^{3,4}$ cis or trans tetrahydrocannabinol, and their optical isomers.[15]

Carboxy THC does have a similar chemical structure to THC.[16] However, as carboxy THC is created during the

---

[13] *Id.*

[14] MCL 257.625(8).

[15] MCL 333.7212(1)(d) (emphasis added).

[16] Dr. McCoy testified that innumerous compounds have a similar chemical structure to THC and yet have no effect on the body. Further-

body's metabolism of that substance, it clearly is a natural, rather than synthetic, byproduct of THC.[17] Accordingly, we find MCL 333.7212(1)(d) inapplicable and must determine if carboxy THC is included in the definition of marijuana as a classified schedule 1 controlled substance.

"Marijuana" is defined as "all parts of the plant Canabis sativa L., growing or not; the seeds thereof; the resin extracted from any part of the plant; and every compound, manufacture, salt, derivative, mixture, or preparation of the plant or its seeds or resin . . . ."[18] As a byproduct of the body's metabolism of marijuana, carboxy THC is clearly not a part of the actual plant nor does it fit within the common definitions of a compound, manufacture, salt, mixture, or preparation.[19] The Legislature did not define "derivative" in the Public Health Code. The Michigan Supreme Court has given us permission to use the common dictionary to define terms. However, it is unnecessary to do so in this case as we can determine the Legislature's intent by other means.

We note that the Legislature could have included metabolites in the definition of marijuana or schedule 1

---

more, the experts agreed that some metabolites of THC do have a pharmacological effect on the body, while others, such as carbon dioxide, do not.

[17] The Legislature is presumed to know the rules of grammar and we must, therefore, consider the placement of the word "synthetic" before each series intentional. See *Niles Twp v Berrien Co Bd of Comm'rs*, 261 Mich App 308, 315; 683 NW2d 148 (2004).

[18] MCL 333.7106(3).

[19] It is not contended that carboxy THC could be chemically classified as a salt. Furthermore, the dictionary definitions of compound, manufacture, mixture, and preparation suggest the creation of a substance or a combination of elements, rather than the breakdown of one substance into others as occurs during the metabolic process. See *Taber's Cyclopedic Medical Dictionary* (16th ed).

controlled substances if it so intended. Under the Child Protection Law, for example, certain parties are required to report if "a newborn infant has any amount of alcohol, a controlled substance, or a metabolite of a controlled substance in his or her body . . . ."[20] "[T]he Legislature is presumed to be aware of all existing statutes when enacting new laws."[21] As the Legislature expressly included metabolites in another statute, we must assume that it intended to expressly *exclude* the regulation of these substances in the Public Health Code.[22] We also note that those Arizona and Indiana statutes cited by the prosecution that prohibit the operation of a motor vehicle under the influence of a controlled substance expressly include metabolites and, therefore, have no persuasive effect on our interpretation of the relevant statutes in this case.[23]

We also find that controlling the presence of carboxy THC in a defendant's body does not comport with the purpose of the Public Health Code. The general purpose of the code is to protect "the health, safety, and welfare of the people of this state."[24] To meet that goal, the Legislature provided the administrator with the following guidance in determining how to classify a substance:

> In making a determination regarding a substance, the administrator shall consider all of the following:
>
> (a) The actual or relative potential for abuse.

---

[20] MCL 722.623a.

[21] *Nemeth v Abonmarche Development, Inc*, 457 Mich 16, 43; 576 NW2d 641 (1998).

[22] See *Farrington v Total Petroleum, Inc*, 442 Mich 201, 209-210; 501 NW2d 76 (1993); *People v Hock Shop, Inc*, 261 Mich App 521, 528; 681 NW2d 669 (2004).

[23] ARS 28-1381(A)(3); Ind Code 9-30-5-5(a)(2).

[24] MCL 333.1111(2).

(b) The scientific evidence of its pharmacological effect, if known.

(c) The state of current scientific knowledge regarding the substance.

(d) The history and current pattern of abuse.

(e) The scope, duration, and significance of abuse.

(f) The risk to the public health.

(g) The potential of the substance to produce psychic or physiological dependence liability.

(h) Whether the substance is an immediate precursor of a substance already controlled under this article.[25]

The Legislature further provided that "After considering the factors enumerated in section 7202, the administrator shall make findings with respect thereto and promulgate a rule controlling the substance if the administrator finds the substance has a potential for abuse."[26] Furthermore, "The administrator shall place a substance in schedule 1 if it [sic] finds that the substance has high potential for abuse and has no accepted medical use in treatment in the United States or lacks accepted safety for use in treatment under medical supervision."[27]

It is undisputed that carboxy THC has no pharmacological effect on the human body and, therefore, it can have no potential for abuse, history of abuse by members of the public, or produce chemical dependence. It is also undisputed that THC is the precursor of carboxy THC, and that carboxy THC is not the immediate precursor of any controlled substance. As carboxy THC itself is a benign substance, it does not meet the criteria for classification as a schedule 1 controlled substance,

[25] MCL 333.7202.
[26] MCL 333.7203(1).
[27] MCL 333.7211.

or for *any* classification of controlled substance.[28] Accordingly, its control could not be the object of the Public Health Code.[29] Both trial courts, therefore, properly determined that carboxy THC is not a schedule 1 controlled substance.

However, the trial courts reached divergent rulings regarding whether a jury could find beyond a reasonable doubt that defendants had THC present in their bodies at the time of their alleged violations from the presence of carboxy THC in their blood. In Docket No. 259315, we find that the trial court erroneously answered this question in the negative and dismissed the charged violation of MCL 257.625(8) against Mr. Kurts. We review a trial court's ruling on a motion to dismiss charges for an abuse of discretion.[30] The evidence presented by the prosecution and defense expert witnesses reveals that the presence of carboxy THC in a person's blood *conclusively* establishes the prior ingestion of THC. It is irrelevant that Dr. McCoy testified that the level of THC in Mr. Kurts's body and related THC-impairment at the time of his traffic stop could not be determined with certainty, based on the level of carboxy THC in his blood. Mr. Kurts admitted to smoking marijuana only one half-hour before he was arrested. In light of this admission and the scientific evidence, although disputed, regarding the significance of the

---

[28] In fact, Dr. Evans testified that carboxy THC can be purchased commercially without a license from the Drug Enforcement Agency.

[29] We also note that this Court held that a former statutory section defining marijuana under the Controlled Substances Act, MCL 335.305(3), included "all forms of marijuana containing the hallucinogenic or euphoric chemical common in all so-called species or varieties of the plant . . . ." *Riddle, supra* at 437. Carboxy THC is a metabolite of that chemical and, as previously noted, has no hallucinogenic or euphoric qualities itself.

[30] *People v Stephen*, 262 Mich App 213, 218; 685 NW2d 309 (2004).

presence of carboxy THC in the blood, there clearly was sufficient evidence to present this charge to the jury. Accordingly, the trial court abused its discretion in dismissing this charge against Mr. Kurts.

### III. CAUSATION

In Docket No. 258346, Ms. Derror was also charged with violating MCL 257.625(4) and MCL 257.625(5), which provide for an enhanced sentence for causing death or serious injury while driving impaired. These subsections provide, in relevant part:

> (4) A person, whether licensed or not, who operates a motor vehicle in violation of subsection (1), (3), or (8) and by the operation of that motor vehicle causes the death of another person is guilty of a crime . . . .

> (5) A person, whether licensed or not, who operates a motor vehicle in violation of subsection (1), (3), or (8) and by the operation of that motor vehicle causes a serious impairment of a body function of another person is guilty of a felony . . . .[31]

The prosecution contends that it need not prove a causal relationship between the presence of the controlled substance in Ms. Derror's body and the accident. As MCL 257.625(8) proscribes the operation of a motor vehicle with *any* amount of a controlled substance in the operator's body, the statute imposes strict liability. Therefore, the prosecution argues that it is not required to establish impairment causing an accident.

The Michigan Supreme Court previously held in *People v Lardie*[32] that the Legislature did not intend to impose strict liability on an individual who "by the operation" of his or her vehicle while under the influ-

---

[31] MCL 257.625.

[32] *People v Lardie*, 452 Mich 231; 551 NW2d 656 (1996).

ence of alcohol "causes the death of anther person" in violation of MCL 257.625(4).[33] Pursuant to *Lardie*, the defendant's voluntary and purposeful operation of the vehicle while under the influence must have been "a substantial cause of the victim's death."[34] The statute was "designed to punish drivers when their *drunken* driving caused another's death."[35] Therefore, the Court found that imposing a penalty on a driver when the fatal accident would have occurred regardless of that intoxication would fail to serve the purpose of the statute.[36]

The Michigan Supreme Court recently overruled this holding in the companion cases of *People v Schaefer* and *People v Large*.[37] The Court found that, according to the plain language of the statute, "it is the defendant's *operation* of the motor vehicle that must cause the victim's death, not the defendant's 'intoxication.' "[38] Although the defendant's intoxication is an element of the offense, "it is not a component of the *causation* element of the offense."[39] However, operating under the influence causing death is not a strict liability offense as suggested by the prosecution. In order to establish the causation element, the prosecution must prove that the defendant's operation of the vehicle was both a factual and proximate cause of the victim's death.[40]

> The concept of factual causation is relatively straightforward. In determining whether a defendant's conduct is

---

[33] *Id*. at 256-260.

[34] *Id*. at 256, 259-260.

[35] *Id*. at 257 (emphasis in original).

[36] *Id*. at 257-258.

[37] *Schaefer, supra* at 433-434.

[38] *Id*. at 438.

[39] *Id*. (emphasis in original).

[40] *Id*. at 450.

a factual cause of the result, one must ask, "but for" the defendant's conduct, would the result have occurred? If the result would not have occurred absent the defendant's conduct, then factual causation exists.[41]

To establish proximate causation, the prosecution must show that the victim's injury was a " 'direct and natural result' of the defendant's actions."[42] However, an intervening cause may supersede the defendant's act "as a legally significant causal factor" and break the causal chain.[43] In order to supersede the defendant's act, the intervening cause must be "foreseeable based on an objective standard of reasonableness."[44] "While an act of God or the *gross* negligence or intentional misconduct by the victim or a third party will generally be considered a superseding cause, *ordinary* negligence by the victim or a third party will not be regarded as a superseding cause because ordinary negligence is reasonably foreseeable."[45]

Although *Lardie, Schaefer,* and *Large* involve violations of MCL 257.625(4) alone, we see no reason to interpret the identical language of MCL 257.625(5) differently. Furthermore, there is no indication in the plain language of these subsections that the Legislature intended to treat violations of subsection (8) differently than violations of subsections (1) or (3). While the trial court properly determined the prosecution's burden at that time, we are bound to follow the Michigan Supreme Court's decision in *Schaefer* and *Large*.[46] Accord-

[41] *Id.* at 435-436.

[42] *Id.* at 436-437.

[43] *Id.*

[44] *Id.* at 437.

[45] *Id.* at 438-439 (emphasis in original).

[46] *O'Dess v Grand Trunk W R Co,* 218 Mich App 694, 700; 555 NW2d 261 (1996).

ingly, the prosecution must establish that Ms. Derror's operation of her vehicle, rather than the presence of a controlled substance in her body, was both a factual and proximate cause of the death and serious injuries of the victims.

In *Derror*, we affirm the trial court's determination that the presence of carboxy THC may be evidence of a schedule 1 controlled substance in Ms. Derror's body at the time of the alleged violation. To the extent that the trial court required the prosecution to establish causation under MCL 257.625(4) and MCL 257.625(5) consistent with *Lardie*, we reverse the trial court's order in that case. In *Kurts*, we affirm the trial court's determination that carboxy THC is not a schedule 1 controlled substance. However, we reverse the court's dismissal of the charged violation of MCL 257.625(8) against Mr. Kurts based on its erroneous determination that the presence of this substance in his body was not evidence of the presence of a schedule 1 controlled substance in his body at the time of the alleged violation. We, therefore, remand both cases for further proceedings consistent with this opinion. We do not retain jurisdiction.