*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

BRIAN JONES, TYREE HALL, JOHN
MITCHELL and DEON EVERETTE,

        Plaintiffs-Appellees,

v

UNITED ELECTRICAL CONTRACTORS,

        Defendant-Appellant,
and

ALEX DOE, JOHN DOE #1, and JOHN DOE #2,

        Defendants.

UNPUBLISHED
November 21, 2024
3:58 PM

No. 368565
Oakland Circuit Court
LC No. 2022-193095-NO

Before: FEENEY, P.J., and O'BRIEN and WALLACE, JJ.

PER CURIAM.

Defendant, United Electrical Contractors (United Electrical), appeals by leave granted[1] an order denying its motion for summary disposition of plaintiffs' claims for ethnic intimidation, intentional infliction of emotional distress (IIED), and civil conspiracy. We reverse.

## I. BACKGROUND FACTS

Plaintiffs are installers who work for Air King Inc., a heating, ventilation, and air conditioning (HVAC) company that regularly works as a subcontractor to a general contractor. Defendant United Electrical (defendant) is also a subcontractor that works on similar projects, and had workers on a Farmington Hills jobsite for several months with Air King. The three "Doe"

---

[1] *Jones v United Electrical Contractors*, unpublished order of the Court of Appeals, entered April 11, 2024 (Docket No. 368565).

defendants allegedly worked as employees of United Electrical and were on the same project in Farmington Hills with plaintiffs when the events giving rise to this action occurred.

Plaintiffs were all working on the Farmington Hills jobsite and, in their first amended complaint,[2] plaintiffs alleged that "they were the only African Americans at the site from any employer or subcontractor." Plaintiffs further alleged that, while working at the jobsite, the Doe defendants subjected plaintiffs to acts of ethnic intimidation and outrageous conduct amounting to IIED. The alleged conduct by the Doe defendants included: (1) failing to greet plaintiffs although they greeted white workers, (2) glaring and staring at plaintiffs with "looks of intimidation" while plaintiffs were working at the jobsite, (3) asking plaintiffs' supervisor why plaintiff Jones was "here" and stating that he wanted "them" off the jobsite, and (4) tearing down fixtures and apparatuses installed by plaintiffs. According to plaintiffs, outhouses at the jobsite were defaced with racial epithets, including: "The n****** are here" and "Get them out of here." Lastly, plaintiffs averred, in September 2021 Alex Doe took a rope belonging to Air King and used it to make a hangman's noose in the area where plaintiffs were working. Accordingly, in Count I of plaintiffs' amended complaint, they asserted that the actions of the Doe defendants amounted to outrageous conduct supporting a claim for IIED. In Count II, plaintiffs alleged that there was a civil conspiracy to ostracize, intimidate, terrorize, and harass plaintiffs on the basis of their race. And, in Count III, plaintiffs alleged that the conduct constituted ethnic intimidation in violation of MCL 750.147b, which supported a civil action under MCL 750.147b(3).

After the close of discovery, defendant moved for summary disposition under MCR 2.116(C)(8) and (C)(10). Defendant noted that plaintiffs had neither identified the "Doe" defendants nor added them as named parties to the complaint; thus, no discovery had been possible in their regard. First, defendant argued that the claim for ethnic intimidation must fail because (1) MCL 750.147b(3) does not provide for vicarious liability, only personal liability; (2) the alleged conduct, i.e., actions and statements—which have not been specifically attributed to any named person—do not satisfy the statute; and (3) plaintiffs did not suffer physical injury or property damage. Second, defendant argued that plaintiffs' IIED claim must fail because (1) the Doe defendants' alleged conduct, including use of racial slurs and insults, was not extreme and outrageous; (2) plaintiffs did not suffer severe emotional distress; (3) defendant could not be held vicariously liable for intentional torts of its employees committed outside the scope of their employment; and (4) plaintiffs had no evidence that any of the Doe defendants wrote epithets on the outhouses and only identified Alex Doe as the noose-maker, who admitted that he made it as a joke on a white coworker. Third, defendant argued that the civil conspiracy claim must fail because defendant did not hire the Doe defendants to harass, threaten, or otherwise cause plaintiffs' emotional distress; thus, there is no actionable conspiracy. Defendant attached several exhibits to its motion for summary disposition, including the transcripts of the deposition testimony of each plaintiff. Accordingly, defendant requested that the trial court grant its motion and dismiss all of plaintiffs' claims against defendant.

---

[2] Plaintiffs' filed this first amended complaint as permitted by order entered on June 23, 2022, following defendant's first motion for summary disposition, brought under MCR 2.116(C)(8), that was filed in response to plaintiffs' initial complaint.

Plaintiffs responded to defendant's motion for summary disposition, noting first that defendant "has a history of racism, as shown by a previous federal lawsuit filed by its employees alleging a pervasive culture of discrimination." Plaintiffs gave no identifying information about this alleged lawsuit. Plaintiffs asserted that the same "culture" extended to other contractors at jobsites, including the one in Farmington Hills where plaintiffs were working for Air King. At that time, plaintiffs stated, they were the only African American workers at the jobsite consisting of approximately 100 workers for various subcontractors. And plaintiffs were subjected to overt acts of racism from the Doe defendants, who were employed by defendant. By way of example, the Doe defendants routinely greeted the white workers each morning on the jobsite, while specifically ignoring plaintiffs. One time, Doe defendant #1 asked plaintiffs' supervisor why plaintiff Jones was there, saying: "Why is he here?" Then he said that he wanted "them" off the jobsite. Various fixtures and apparatuses that plaintiffs installed as HVAC installers were consistently removed by the Doe defendants—without permission or explanation. The Doe defendants would stare, glare, and watch plaintiffs while they were performing their work activities on the jobsite. Plaintiffs were also forced to confront racist epithets written on the outhouses at the jobsite, such as "the n****** are here" and "get them out of here." One time, Alex Doe made a hangman's noose out of a rope belonging to Air King, that was being used by plaintiffs, and displayed it in the area where plaintiffs were working.

Plaintiffs argued that their ethnic intimidation claim brought under MCL 750.147b(3) was sufficiently supported by the evidence because it was clear from the evidence, including the hangman's noose, that the Doe defendants intended to intimidate or harass plaintiffs through threatening words and acts merely because plaintiffs are African American, and plaintiffs had reasonable cause to believe that physical contact would follow. Further, plaintiffs argued, they were not required to show physical injury; a claim based on emotional distress was permissible. And, defendant could be held liable for ethnic intimidation because defendant is considered a "person" under the penal code, see MCL 750.10, and failed to stop its employees from engaging in ethnic intimidation. Plaintiffs further argued that the outrageous conduct in this case was intentional and caused each of them severe emotional distress; thus, their claim for IIED should not be dismissed. Lastly, plaintiffs argued that their claim for civil conspiracy could be maintained on the basis of the underlying torts of ethnic intimidation and IIED committed by defendant's employees. Plaintiffs only attached copies of case law to their responsive brief. Plaintiffs repeatedly noted throughout their responsive brief that the discovery period was not closed and argued that additional discovery would lead to the names of the Doe defendants and further support their claims; thus, summary disposition was premature at that stage in the proceedings.[3]

Defendant filed a reply brief in support of its motion for summary disposition, arguing that plaintiffs were required to establish physical injury to their person or damage to their property and had not done so. But, in any case, defendant argued, it could not be held vicariously liable for the acts of its employees as a matter of law. Thus, plaintiffs' ethnic intimidation and IIED claims must

---

[3] However, the amended scheduling order entered on April 21, 2023, following three previous adjournments, stated that discovery was to be completed by June 30, 2023, and dispositive motions had to be filed by July 14, 2023. Defendant's motion for summary disposition was filed on July 14, 2023, and plaintiffs filed their response on September 12, 2023; thus, the discovery period had been closed for well over two months when plaintiffs filed their responsive brief.

be dismissed. Plaintiffs' IIED claim must also be dismissed because they did not know who wrote the racial epithets in the outhouses and the alleged tearing down of their work, as well as stares or glares while they were working, were insufficient to support such a claim. Moreover, as plaintiffs testified, Alex Doe said that the noose was directed toward his own coworkers, not plaintiffs. And plaintiffs could not establish that they suffered severe emotional distress because they had no medical treatment in that regard. Defendant noted that discovery was complete and plaintiffs had presented no evidence in which to establish that a genuine issue of material fact existed for trial with respect to any of their claims.

On October 11, 2023, the trial court held oral arguments on defendant's motion. The parties argued consistently with their briefs, with defendant adding that plaintiffs' response to its motion for summary disposition relied merely on the factual allegations in their first amended complaint, which was wholly insufficient to establish that a genuine issue of material fact existed as to their claims. Defendant also argued that, contrary to plaintiffs' claim in their responsive brief, the discovery period was closed and the trial was scheduled to start in the near future. Therefore, no further discovery was going to reveal new information to support plaintiffs' claims. Following oral arguments, the trial court denied defendant's motion for summary disposition, holding that, with regard to the ethnic intimidation claim, there remained a question of fact as to whether emotional distress "in and of itself is actual damage" and, with respect to the other two claims, "those survive as well based on the pleadings and oral argument." On October 20, 2023, an order was entered denying defendant's motion for summary disposition. Thereafter, defendant sought leave to appeal to this Court. On November 20, 2023, a stipulated order was entered by the trial court staying the proceedings pending resolution of defendant's appeal. On April 11, 2024, this Court entered an order granting defendant's application for leave to appeal, "limited to the issues raised in the application and supporting brief." *Jones v United Electrical Contractors*, unpublished order of the Court of Appeals, entered April 11, 2024 (Docket No. 368565).

Defendant argues that the trial court erred when it denied its motion for summary disposition of plaintiffs' ethnic intimidation, intentional infliction of emotional distress, and civil conspiracy claims. We agree.

II. ANALYSIS

A. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision on a motion for summary disposition. *Estate of Voutsaras v Bender*, 326 Mich App 667, 671-672; 929 NW2d 809 (2019). Summary disposition is appropriate under MCR 2.116(C)(8) when the nonmoving party has failed to state a claim upon which relief can be granted. *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999). A motion under MCR 2.116(C)(8) tests the legal sufficiency of the complaint and, therefore, this Court must base its decision on the pleadings alone. *Id*. at 119-120. All well-pleaded allegations must be accepted as true and construed in a light most favorable to the nonmoving party. *Johnson v Pastoriza*, 491 Mich 417, 434-435; 818 NW2d 279 (2012). The motion may be granted only when the allegations are "so clearly unenforceable as a matter of law that no factual development could possibly justify recovery." *Maiden*, 461 Mich at 119 (quotation marks and citation omitted).

-4-

A motion for summary disposition under MCR 2.116(C)(10) tests the factual support for a claim. *Stone v Auto-Owners Ins Co*, 307 Mich App 169, 173; 858 NW2d 765 (2014) (citation omitted). The moving party must identify the matters that have no disputed factual issues, and has the initial burden of supporting its position with documentary evidence. *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). The party opposing the motion must then establish by evidentiary materials that a genuine issue of disputed fact exists. *Id*. at 362-363. After considering the documentary evidence submitted in the light most favorable to the nonmoving party, the court determines whether a genuine issue of material fact exists to warrant a trial. *Walsh v Taylor*, 263 Mich App 618, 621; 689 NW2d 506 (2004). If reasonable minds could differ on an issue, a genuine issue of material fact exists. *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008).

We also "review de novo the interpretation and application of a statute as a question of law. If the language of a statute is clear, no further analysis is necessary or allowed." *Eggleston v Bio-Medical Applications of Detroit, Inc*, 468 Mich 29, 32; 658 NW2d 139 (2003). Our purpose in reviewing questions of statutory construction is to discern and give effect to the Legislature's intent. *Echelon Homes, LLC v Carter Lumber Co*, 472 Mich 192, 196; 694 NW2d 544 (2005).

## B. ETHNIC INTIMIDATION

Under MCL 750.147b, ethnic intimidation is a criminal offense and also gives rise to a civil cause of action. The statute provides:

(1) A person is guilty of ethnic intimidation if that person maliciously, and with specific intent to intimidate or harass another person because of that person's race, color, religion, gender, or national origin, does any of the following:

(a) Causes physical contact with another person.

(b) Damages, destroys, or defaces any real or personal property of another person.

(c) Threatens, by word or act, to do an act described in subdivision (a) or (b), if there is reasonable cause to believe that an act described in subdivision (a) or (b) will occur.

(2) Ethnic intimidation is a felony punishable by imprisonment for not more than 2 years, or by a fine of not more than $5,000.00, or both.

(3) Regardless of the existence or outcome of any criminal prosecution, a person who suffers injury to his or her person or damage to his or her property as a result of ethnic intimidation may bring a civil cause of action *against the person who commits the offense* to secure an injunction, actual damages, including damages for emotional distress, or other appropriate relief. A plaintiff who prevails in a civil action brought pursuant to this section may recover both of the following:

(a) Damages in the amount of 3 times the actual damages described in this subsection or $2,000.00, whichever is greater.

(b) Reasonable attorney fees and costs.  [MCL 750.147b (emphasis added).]

Defendant argues that it was entitled to summary disposition because it cannot be held vicariously liable under MCL 750.147b(3) for the purported conduct of its employees, including the Doe defendants, even if their alleged acts did constitute violations of the ethnic intimidation statute.  That is so because, according to the statute, plaintiffs may only "bring a civil cause of action against the person who commits the offense . . . ."  MCL 750.147b(3).  Defendant merely employed the Doe defendants; defendant did not commit the ethnic intimidation offense.  In response, plaintiffs assert that defendant may be held liable because it is a "person" for purposes of the Michigan Penal Code, which includes MCL 750.147b.  See MCL 750.10 ("The words 'person', 'accused', and similar words include, unless a contrary intention appears, public and private corporations, copartnerships, and unincorporated or voluntary associations.").  We agree with defendant's argument.  Certainly, defendant may be a "person" for purposes of the Michigan Penal Code.  See *id*.  However, "the fact that defendant is a legal person does not automatically make it criminally liable for the acts of other persons."  *People v Hock Shop, Inc*, 261 Mich App 521, 525; 681 NW2d 669 (2004).  And, as written, MCL 750.147b(3) only affords a civil cause of action against the person *who commits* the offense.  If defendant could not be held criminally liable for committing the offense, it also cannot be subject to a civil cause of action under MCL 750.147b.

Similar to this case, in *Hock Shop*, the issue was whether a corporate employer could be held vicariously liable under criminal statutes prohibiting the sale of a firearm and ammunition to a felon, i.e., for "the criminal acts of its employees committed during the course of their employment."  *Hock Shop*, 261 Mich App at 522.  This Court noted that, although there were numerous cases holding that a corporation could be held vicariously liable for the tortious acts of its agents, there were few cases "addressing the extent of corporate respondeat superior liability in the context of criminal activity."  *Id*. at 526.  "Under vicarious liability, the principal is only liable because the law creates a practical identity with his [agents], so that he is held to have done what they have done."  *Id*. (quotation marks and citations omitted).  Thus, the *Hock Shop* Court noted, "where the agent is a manager, officer, or board member of the corporation, the agent's criminal intent can be imputed to the corporation itself."  *Id*. at 527.  But where the employee who committed the criminal act was not a high management official, this Court held that whether vicarious liability applies depends on the statute and whether it contains an express provision providing for vicarious liability.  *Id*. at 528.  Because the statute at issue in *Hock Shop* contained no specific or express provision imposing vicarious liability, this Court concluded that it could not infer an intent by the Legislature to impose vicarious liability for the criminal acts of the corporate defendant's employees.  *Id*. at 528, 533.

In this case, through MCL 750.147b the Legislature did not intend to impose vicarious liability upon an employer whose employees committed acts that constituted ethnic intimidation during the course of their employment.  Further, ethnic intimidation is a specific-intent crime, requiring that the person "maliciously, and with specific intent to intimidate or harass another person . . . " commit the prohibited acts.  Thus, the crime must have been committed either purposefully or knowingly.  See *People v Zitka*, 325 Mich App 38, 51; 922 NW2d 696 (2018), quoting *People v Lerma*, 66 Mich App 566, 569; 239 NW2d 424 (1976).  As the *Hock Shop* Court noted:

In 1 Restatement Agency, 2d, § 217D, 474, it is acknowledged that "[a] principal may be subject to penalties enforced under the rules of the criminal law, for acts done by a servant or other agent." However, the comments on that section make clear that in the absence of an express statutory provision imposing such liability, it will generally not be found to exist where the statute requires a specific criminal intent. [*Hock Shop*, 261 Mich App at 526-527 (footnote omitted).]

Consequently, we conclude that defendant cannot be held vicariously liable for the alleged criminal conduct of its low-level employees. And because none of the Doe defendants have ever been identified by plaintiffs, we presume they are low-level employees. Further, because a civil cause of action under MCL 750.147b(3) is limited to "the person who commits the offense," it follows that defendant cannot be held civilly liable for ethnic intimidation because it did not commit the offense. Again, we are charged with the duty to accord the plain and ordinary meaning to the statutory language. *Nastal*, 471 Mich at 720. We will not infer an intent by the Legislature to impose vicarious liability with respect to MCL 750.147b; "the statute must be enforced as written." See *Echelon Homes*, 472 Mich at 196 (quotation marks and citation omitted). Accordingly, defendant cannot be held liable for alleged acts of ethnic intimidation committed by its employees—the unidentified Doe defendants.

Plaintiffs assert on appeal that they are not trying to impose liability on defendant on the basis of vicarious liability. However, plaintiffs fail to identify any act of ethnic intimidation committed by defendant itself or its high-ranking officers against plaintiffs. Instead, plaintiffs contend that defendant may be directly liable because it failed to stop the Doe defendants from engaging in ethnic intimidation. This failure-to-stop argument lacks merit because MCL 750.147b imposes liability for specified malicious acts, i.e., *affirmative* conduct; the statute does not impose criminal or civil liability for *omissions* such as failing to stop another person from committing an act. See, generally, *Johnson*, 491 Mich at 436 (explaining the distinction between affirmative acts and omissions). In short, plaintiffs' failure-to-stop argument does not provide a basis for concluding that defendant committed the offense of ethnic intimidation. But, perhaps more importantly, plaintiffs never identified the Doe defendants despite having sufficient time to discover such information. Plaintiffs also presented no evidence that defendants were even aware of the alleged acts of ethnic intimidation committed by these unidentified employees and still failed to stop them from engaging in such behavior. Thus, this argument is without merit.

Plaintiffs also assert that the record shows that defendant has a "history of racial discrimination against its employees." The basis for this factual assertion by plaintiffs is unclear; they have not provided a citation to the record to support a history of employment discrimination by defendant on the basis of race. Regardless, the claim in this case is one of ethnic intimidation, not employment discrimination. Absent more details, plaintiffs' undeveloped claims of employment discrimination do not support that defendant had a policy of ethnic intimidation contrary to MCL 750.147b. In this regard, this Court's decision in *Hock Shop*, 261 Mich App at 525, suggested that criminal liability could arise for a defendant corporation when the illegal act was committed "pursuant to any policies of the defendant corporation." If plaintiffs are trying to suggest that defendant has a policy of ethnic intimidation, they did not plead such a theory in their complaint and they presented no evidence to support such a theory in their response to defendant's motion for summary disposition. Thus, this argument is without merit.

In summary, defendant cannot be held vicariously liable for the alleged acts of ethnic intimidation committed by its employees—the unidentified Doe defendants. Accordingly, the trial court erred when it denied defendant's motion for summary disposition of plaintiffs' ethnic intimidation claim and that decision is reversed. Plaintiffs failed to state a claim upon which relief could be granted. See MCR 2.116(C)(8). Because this conclusion is dispositive, we need not consider the issues whether any plaintiff sustained a requisite injury under the statute as a result of the alleged ethnic intimidation or whether such alleged acts even constituted ethnic intimidation. See *B P 7 v Bureau of State Lottery*, 231 Mich App 356, 359; 586 NW2d 117 (1998) ("As a general rule, an appellate court will not decide moot issues."). Further, because plaintiffs never identified the Doe defendants, the Doe defendants were not served and were never participants in this litigation. And considering that the discovery period had been closed for over two months when defendant's motion was filed, this ethnic intimidation claim must be dismissed as to the purported Doe defendants as well. See MCR 7.216(A)(7) (This Court may "enter any judgment or order or grant further or different relief as the case may require[.]").

## C. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

As this Court explained in *Swain v Morse*, 332 Mich App 510, 534; 957 NW2d 396 (2020):

> To establish a claim of intentional infliction of emotional distress, a plaintiff must prove the following elements: (1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress. Liability attaches only when a plaintiff can demonstrate that the defendant's conduct is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The test is whether the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!" [(internal quotation marks and citations omitted).]

Defendant argues that it was entitled to summary disposition of plaintiffs' IIED claim because it cannot be held vicariously liable for a tort intentionally or recklessly committed by its employee when the tort is beyond the scope of the employer's business and no exception to that general rule applies. In other words, defendant argues, plaintiffs presented no evidence that defendant intended any of the alleged conduct of the Doe defendants or that defendant was in any way negligent or reckless, or that the alleged conduct violated a non-delegable duty of defendant. In response, plaintiffs assert that a federal lawsuit filed against defendant by its employees alleging a culture of racism and discrimination against its own employees demonstrates that defendant ratified the Doe defendants' behavior against plaintiffs in this case. Further, plaintiffs argue, defendant should have known about its employees' racial animosity against plaintiffs but did nothing to stop it, illustrating that defendant intended the alleged conduct of the Doe defendants and had a specific intent to inflict emotional distress on plaintiffs. We agree with defendant's argument.

The general rule is that an employer is not liable for torts intentionally or recklessly committed by employees when those actions are beyond the scope of the employer's business.

See, e.g., *Hamed v Wayne Co*, 490 Mich 1, 11; 803 NW2d 237 (2011) (citation omitted); *Zsigo v Hurley Med Ctr*, 475 Mich 215, 221; 716 NW2d 220 (2006). It is undisputed in this case that the defendant's business was electrical contracting and that the Doe defendants were employed to perform electrical work for defendant; they were not employed by defendant to intimidate or inflict emotional distress on plaintiffs because of plaintiffs' race. But there are some exceptions to this general rule of nonliability, including when an employer knew or should have known of the employee's "propensities and criminal record before that employee committed an intentional tort." *Hamed*, 490 Mich at 12 (internal quotation marks, italics, and citation omitted). "This inquiry involves an analysis of whether an employer had (1) actual or constructive knowledge of prior similar conduct and (2) actual or constructive knowledge of the employee's propensity to act in accordance with that conduct." *Id*. The *Hamed* Court summarized "that an employer's liability for the criminal acts of its employees is limited to those acts it can reasonably foresee or reasonably should have foreseen." *Id*. at 13.

In this case, plaintiffs have not identified the Doe defendants. Plaintiffs have also not identified any prior similar conduct of any of the individual Doe defendants. Thus, there is no way to determine whether defendant knew or should have known, i.e., whether it was foreseeable, that any or all of the Doe defendants would engage in racially-motivated illegal or extreme and outrageous conduct.

There are other exceptions to the general rule of nonliability as recognized by our Supreme Court in *Zsigo*, 475 Mich at 221, including: (1) when the employer "intended the conduct or the consequences," or (2) when the employer "was negligent or reckless," or (3) "the conduct violated a non-delegable duty" of the employer. But, as defendant argues, plaintiffs have offered no evidence showing that defendant intended the alleged conduct of the Doe defendants or any of the consequences of that conduct. Plaintiffs have also not shown by any evidence that defendant was negligent or reckless, or that the Doe defendants' conduct violated a non-delegable duty of defendant. In fact, plaintiffs have not set forth a cogent argument as to how they believe defendant should be held vicariously liable for the actions of the Doe defendants.

Instead, plaintiffs have merely claimed to have "presented a history of racism" committed by defendant. Plaintiffs then reference a "2022 federal lawsuit" against defendant filed by its employees alleging a culture of racism and discrimination against its own employees. But plaintiffs have not actually presented any evidence that defendant has "a history of racism" and plaintiffs have not identified the purported federal lawsuit. Plaintiffs have presented no admissible evidence of any kind in support of their claims. For example, plaintiffs have not identified the individual Doe defendants; plaintiffs have not presented sworn testimony (either by deposition testimony or affidavit) from any individual employed or associated with defendant, including a foreman employed by defendant who plaintiffs referred to as Alonzo; plaintiffs have not presented sworn testimony from their own supervisor (who they referred to as Dan), or from Air King's project manager (who they referred to as Mike), or Air King's owner (who they referred to as Kahlil); plaintiffs have not presented sworn testimony from the general contractor on the specific jobsite at issue (who they referred to as Larry), and plaintiffs have not presented sworn testimony from any of the other subcontractors (they claim there were over 100) who were working on that jobsite when these events allegedly occurred. In short, plaintiffs have presented no evidence in support of their claim that defendant should be held vicariously liable for the alleged criminal acts or torts intentionally or recklessly committed by defendant's employees, the Doe defendants.

In summary, the trial court erred when it denied defendant's motion for summary disposition of plaintiffs' IIED claim and that decision is reversed. Plaintiffs failed to establish that a genuine issue of material fact existed in this regard, as discussed above. See MCR 2.116(C)(10). Because this conclusion is dispositive, we need not consider the issues whether the Doe defendants' alleged actions constituted extreme and outrageous conduct sufficient to state a cause of action or whether any plaintiff suffered severe emotional distress as required to establish their IIED claim. See *B P 7*, 231 Mich App at 359 ("As a general rule, an appellate court will not decide moot issues."). Further, because plaintiffs never identified the Doe defendants, the Doe defendants were not served and were never participants in this litigation. And considering that the discovery period had been closed for over two months when defendant's motion was filed, this IIED claim must be dismissed as to the purported Doe defendants as well. See MCR 7.216(A)(7) (This Court may "enter any judgment or order or grant further or different relief as the case may require[.]").

## D. CIVIL CONSPIRACY

"A civil conspiracy is a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means." *Advocacy Org for Patients & Providers v Auto Club Ins Ass'n*, 257 Mich App 365, 384; 670 NW2d 569 (2003) (quotation marks and citation omitted). But for liability to arise from a civil conspiracy, "it is necessary to prove a separate, actionable tort." *Id*. (quotation marks and citation omitted). In this case, as discussed above, plaintiffs failed to establish any actionable underlying tort against defendant; therefore, plaintiffs cannot establish their civil conspiracy claim. Thus, the trial court erred when it denied defendant's motion for summary disposition of plaintiffs' civil conspiracy claim and that decision is reversed. Plaintiffs failed to establish that a genuine issue of material fact existed in this regard, as discussed above. See MCR 2.116(C)(10). Further, because plaintiffs never identified the Doe defendants, the Doe defendants were not served and were never participants in this litigation. And considering that the discovery period had been closed for over two months when defendant's motion was filed, this civil conspiracy claim must be dismissed as to the purported Doe defendants as well. See MCR 7.216(A)(7).

## III. CONCLUSION

We note that the conduct alleged in this matter is disturbing. But, for the above reasons, we find that plaintiffs' ethnic intimidation claim fails to state a claim upon which relief could be granted as to this defendant. With regard to plaintiffs' claims for intentional infliction of emotional distress and civil conspiracy, based upon the applicable law and the record before us, no genuine issue of material fact exists as to whether defendant is liable, even when the evidence is viewed in the light most favorable to plaintiffs. Therefore, we hold that the trial court erred when it denied defendant's motion for summary disposition of plaintiffs' ethnic intimidation, intentional infliction of emotional distress, and civil conspiracy claims. That order is reversed and this matter is remanded for entry of an order granting defendant's motion, thereby dismissing this case against defendant United Electrical Contractors with prejudice. Further, as discussed above, plaintiffs' claims against the purported Doe defendants must be dismissed as well; however, because the Doe defendants were never served with the summons and complaint, the dismissal as to the Doe defendants, only, shall be without prejudice.

Reversed and remanded for proceedings consistent with this opinion.  We do not retain jurisdiction.

/s/ Kathleen A. Feeney
/s/ Colleen A. O'Brien
/s/ Randy J. Wallace